IN RE D.A.C.

[225 N.C. App. 547 (2013)]

IN THE MATTER OF D.A.C.

No. COA12-568

Filed 19 February 2013

**Juveniles—delinquency—oral admissions—custodial interrogation—Miranda warnings**

The trial court did not err by denying the juvenile defendant's motion to suppress his oral admissions to investigating officers. The juvenile was not in custody at the time that he orally admitted having fired a shot which struck the neighbor's residence, and thus, was not subjected to an impermissible custodial interrogation conducted without the provision of the warnings required by *Miranda*, 384 U.S. 436, and N.C.G.S. § 7B-2101.

Appeal by juvenile from adjudication and disposition orders entered 5 January 2012 by Judge Amanda Wilson in Stanly County District Court. Heard in the Court of Appeals 22 October 2012.

*Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.*

*Michelle FormyDuval Lynch, for juvenile-appellant.*

ERVIN, Judge.

Juvenile D.A.C. appeals from orders adjudicating him to be a delinquent juvenile based on a determination that he had committed the offenses of injury to personal and real property and placing him on juvenile probation subject to certain terms and conditions. On appeal, Juvenile contends that the trial court erred by denying his motion to suppress an inculpatory statement which he alleges to have been obtained as the result of a violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and N.C. Gen. Stat. § 7B-2101. After careful consideration of Juvenile's challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders should be affirmed.

## I. Factual Background

### A. Substantive Facts

On 29 October 2011, Detective Lieutenant Scott Williams of the Stanly County Sheriff's Office, who was off duty at the time,

**IN RE D.A.C.**

[225 N.C. App. 547 (2013)]

responded to a call that gunshots had been fired into a home. Upon arriving at the location specified in the call, Lieutenant Williams determined, based upon the angle at which the bullets had entered the home, that the shots had originated from the house across the street. After Detective Williams was joined by Sergeant W. H. Smith, the two officers approached the home across the street, outside of which they encountered Juvenile.

Upon arriving at the residence from which the shots were believed to have originated, the officers asked Juvenile if his mother was home. After Juvenile went inside and informed his mother of the officers' presence, Sergeant Smith and Lieutenant Williams informed Juvenile's mother that shots had been fired into the home across the street and asked if Juvenile had been outside shooting. After initially responding in the negative, Juvenile's mother told officers that she had been home all day, with the exception of brief periods when she had left to drop off and pick up her husband. While in the presence of Juvenile's mother, the officers asked Juvenile if he had fired a gun that day and obtained a negative answer.

Sergeant Smith and Lieutenant Williams obtained permission from Juvenile's mother to search the area outside Juvenile's home. During that process, they found spent shotgun shells on the front porch. With the exception of an intervening birdhouse, there was a direct line of sight from the porch of the residence in which the Juvenile lived to the house which had been fired into.

At the time that the officers spoke with Juvenile's father for the purpose of telling him what they found, he told them that he "figured" that Juvenile had fired the shots in question. When the officers informed Juvenile's father that they were going to speak with Juvenile briefly outside, Juvenile's father told Juvenile to go with the officers and to be truthful. At that point, Sergeant Smith and Lieutenant Williams asked Juvenile if he would speak with them and received an affirmative response. Although the officers informed Juvenile's parents that they were welcome to accompany their son outside, neither parent said anything. Instead, both parents remained inside with the door shut while the officers spoke with Juvenile.

Sergeant Smith, Lieutenant Williams, and Juvenile went to a point about ten feet outside the home, where they talked for about five minutes. Everyone was standing at arm's length from each other during this discussion. Lieutenant Williams was wearing civilian clothes, while Sergeant Smith was in uniform. Although both officers were

**IN RE D.A.C.**

[225 N.C. App. 547 (2013)]

armed, neither of them touched or made any movement towards their weapons at any point. Juvenile was not placed under arrest, handcuffed, or searched. On the other hand, neither officer ever explicitly told Juvenile that he was free to leave or advised Juvenile of his rights under *Miranda* or N.C. Gen. Stat. § 7B-2101. Juvenile never indicated that he did not want to speak, asked to leave, or requested to speak with anyone else.

At the beginning of this conversation, the officers informed Juvenile that the available information tended to suggest that someone had fired a gun from his residence into the home across the street. After making this statement, the officers asked Juvenile, "did you do it?" In response, Juvenile admitted having fired the shot in question and stated that he had been attempting to hit a birdhouse that was across the street. Once Juvenile had made this admission, the remainder of the conversation focused on various details, including the number of times that Juvenile had actually fired the weapon. During this portion of the conversation, Juvenile admitted that he might have fired five or six shots in the direction of the birdhouse. Subsequently, Juvenile agreed to provide a written statement, ultimately writing a portion of this sitting inside a patrol vehicle and the remainder on the vehicle's trunk.

### B. Procedural History

On 18 November 2011, juvenile petitions were filed, alleging that Juvenile should be adjudicated a delinquent juvenile for committing the offenses of injury to real property in violation of N.C. Gen. Stat. § 14-127 and injury to personal property worth more than $200.00 in violation of N.C. Gen. Stat. § 14-160. The petitions were called for hearing before the trial court at the 5 January 2012 juvenile session of the Stanly County District Court. After conducting an evidentiary hearing, the trial court denied Juvenile's motion to suppress his oral statement and granted his motion to suppress his written statement.[1] Following the trial court's ruling, Juvenile admitted that he had committed the offenses alleged in the petitions. Based upon these admissions, the trial court adjudicated Juvenile a delinquent juvenile and

---

1. Although Juvenile never filed a written suppression motion, the State agreed to waive any objection to the absence of such a written motion and to allow Juvenile to proceed on the basis of an oral motion. After orally indicating that Juvenile's motion would be denied at the conclusion of the suppression hearing, the trial court filed a written order on 3 February 2012, ruling on Juvenile's suppression motion which contained findings of fact and conclusions of law that are generally consistent with the factual recitation that appears in the text of this opinion.

entered a dispositional order placing Juvenile on juvenile probation for six months on the condition that he comply with certain specified terms and conditions, including requirements that he abide by a designated curfew, continue to receive treatment, and make restitution to the owners of the damaged property. Juvenile noted an appeal to this Court from the trial court's adjudication and dispositional orders.

## II. Legal Analysis

[1] In challenging the trial court's orders, Juvenile contends that the trial court erred by denying his motion to suppress his oral admissions to investigating officers on the grounds that he was in custody at the time that he was questioned by Sergeant Smith and Lieutenant Williams and that he had not been advised of his rights under *Miranda* and N.C. Gen. Stat. § 7B-2101.[2] We do not find Juvenile's argument persuasive.

Appellate review of the denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). Any findings of fact which the appealing party does not challenge as lacking in adequate evidentiary support are binding for purposes of appellate review. *State v. Little*, 203 N.C. App. 684, 687, 692 S.E.2d 451, 454, *appeal dismissed*, 364 N.C. 329, 701 S.E.2d 246 (2010). A trial court's conclusions of law are, on the other hand, fully reviewable. *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000). As a result of the fact that Juvenile has not contested the sufficiency of the evidentiary support for most of the trial court's findings of fact and the fact that the one finding that Juvenile has challenged has adequate record support,

---

2. Aside from challenging the validity of the trial court's ultimate conclusion that he had not been subjected to custodial interrogation, Juvenile argues that the trial court's finding that, "[w]hen the Juvenile went outside with the two officers, his parents were inside the home, just inside the door," lacks adequate evidentiary support. However, Lieutenant Williams testified at the suppression hearing that, while Juvenile's parents were not "able to hear what was going on" during the officers' conversation with Juvenile, they were in "the living room beyond the kitchen," which was separated from the door by a "washer and dryer area." As a result, although the record does not show that Juvenile's parents were immediately inside the door leading from the interior of the residence to the location at which Juvenile was being questioned, the record clearly supports the ultimate point of the challenged finding, which is that Juvenile's parents were near at hand during the questioning process. As a result, we conclude that, interpreted in this manner, the challenged finding is adequately supported by the record.

**IN RE D.A.C.**

[225 N.C. App. 547 (2013)]

the specific issue raised by Juvenile's challenge to the trial court's orders is the extent, if any, to which the trial court's findings support its conclusion that Juvenile did not orally admit to having fired a gun in the direction of the neighbor's house while being subjected to custodial interrogation.

According to the decision of the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 1630, 16 L. Ed. 2d 694, 726 (1966), a suspect subjected to custodial interrogation must be advised "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has a right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him." Similarly, N.C. Gen. Stat § 7B-2101(a) provides that:

> Any juvenile in custody must be advised prior to questioning:
>
> (1) That the juvenile has a right to remain silent;
>
> (2) That any statement the juvenile does make can be and may be used against the juvenile;
>
> (3) That the juvenile has a right to have a parent, guardian, or custodian present during questioning; and
>
> (4) That the juvenile has a right to consult with an attorney and that one will be appointed for the juvenile if the juvenile is not represented and wants representation.

"Before admitting into evidence any statement resulting from custodial interrogation, the court shall find that the juvenile knowingly, willingly, and understandingly waived the juvenile's rights." N.C. Gen. Stat. § 7B-2101(d). Although the undisputed evidence, as reflected in the trial court's findings, indicates that Juvenile was never advised of his rights under *Miranda* and N.C. Gen. Stat. § 7B-2101, "*Miranda* warnings and the protections of N.C. [Gen. Stat.] § 7B-2101 apply only to custodial interrogations." *In re W.R.*, 363 N.C. 244, 247, 675 S.E.2d 342, 344 (2009) (citing *In re W.R.*, 179 N.C. App. 642, 645, 634 S.E.2d 923, 926 (2006)). As a result, the critical issue that we must resolve in order to properly evaluate the merits of Juvenile's challenge to the denial of his suppression motion is whether Juvenile was in custody at the time that he orally admitted having fired the shot which struck the neighbor's residence. *In re Butts*, 157 N.C. App. 609, 612, 582

S.E.2d 279, 282 (2003) (holding that "the threshold inquiry for a court ruling on a suppression motion based on [N.C. Gen. Stat.] § 7B-2101, is whether the respondent was in custody when the statement was obtained"), *disc. review improvidently allowed sub nom In re T.R.B.*, 358 N.C. 570, 595 S.E.2d 146 (2004).

A determination as to whether or not an individual subjected to questioning by law enforcement officers was in custody "requires the trial court to apply an objective test as to whether a reasonable person in the position of the [questioned individual] would believe himself to be in custody or that he had been deprived of his freedom of action in some significant way." *Id.* at 613, 582 S.E.2d at 282 (quoting *State v. Sanders*, 122 N.C. App. 691, 693, 471 S.E.2d 641, 642 (1996)) (quotation marks omitted). Simply put, "[t]he test for determining if a person is in custody is whether, considering all the circumstances, a reasonable person would not have thought that he was free to leave because he had been formally arrested or had had his freedom of movement restrained to the degree associated with a formal arrest." *W.R.*, 363 N.C. at 248, 675 S.E.2d at 344. In making the required determination, a reviewing court must consider the totality of the surrounding circumstances. *State v. Buchanan*, 353 N.C. 332, 339, 543 S.E.2d 823, 828 (2001). Among other things, determining whether a juvenile was in custody at the time that he or she made an inculpatory statement requires consideration of the juvenile's age, "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent." *J.D.B. v. North Carolina*, ___ U.S. ___, ___, 131 S. Ct. 2394, 2406, 180 L. Ed. 2d 310, 326 (2011). In addition, "(1) the nature of the interrogator, (2) the time and place of the interrogation, (3) the degree to which suspicion had been focused on the defendant, (4) the nature of the interrogation and (5) the extent to which defendant was restrained or free to leave," may also be relevant to a determination of whether a particular individual was in custody at the time that he or she made a statement which the prosecution seeks to have admitted into evidence. *State v. Crudup*, 157 N.C. App. 657, 660-61, 580 S.E.2d 21, 24 (2003) (*citing State v. Clay*, 39 N.C. App. 150, 155, 249 S.E.2d 843, 846 (1978), *rev'd on other grounds*, 297 N.C. 555, 256 S.E.2d 176 (1979)).

A careful analysis of the totality of the circumstances surrounding the making of Juvenile's statement clearly indicates, as the trial court determined, that Juvenile was not subject to the degree of restraint inherent in a formal arrest at the time that he admitted having shot in the direction of the neighbor's house. The fact that the

investigating officers asked him to step outside, rather than instructing him to do so, suggests that Juvenile was not subject to any formal restraint at the time he was questioned. In addition, the record contains no indication that Juvenile did anything more during his conversation with Sergeant Smith and Lieutenant Williams than answer a simple, straightforward question. All three participants in this conversation were standing and remained at arm's length from each other during the time that the officers spoke with Juvenile. In addition, instead of being in uniform, Lieutenant Williams was wearing a sweatshirt and khaki pants during the questioning. As a result, instead of being involved in a closed door conference room with police and an assistant principal, *e.g.*, *J.D.B.*, ___ U.S. at ___, 131 S. Ct. at 2399, 180 L. Ed. 2d at, 319, Juvenile was questioned in an open area in his own yard with his parents nearby. The conversation between Juvenile and the investigating officers occurred in broad daylight and lasted for about five minutes. As a result, the findings of fact set out in the trial court's order clearly support its determination that Juvenile was not subjected to custodial interrogation.

Admittedly, as Juvenile argues, he was immediately suspected of having shot at his neighbor's house and was questioned by investigating officers for that reason. "Although any interview of a suspect will necessarily possess coercive aspects, *Miranda* warnings are not required simply because the questioned person is suspected by the police of wrongdoing." *In re Hodge*, 153 N.C. App. 102, 108, 568 S.E.2d 878, 882 (citing *State v. Gaines*, 345 N.C. 647, 662, 483 S.E.2d 396, 405, *cert. denied*, 522 U.S. 900, 118 S. Ct. 248, 139 L. Ed. 2d 177 (1997)), *appeal dismissed*, 356 N.C. 613, 574 S.E.2d 681 (2002). In fact, "[a]bsent indicia of formal arrest, [the facts] that police have identified the person interviewed as a suspect and that the interview was designed to produce incriminating responses from the person are not relevant in assessing whether that person was in custody for *Miranda* purposes." *W.R.*, 363 N.C. at 248, 675 S.E.2d at 344 (citing *Stansbury v. California*, 511 U.S. 318, 324, 114 S. Ct. 1526, 1529-30, 128 L. Ed. 2d 293, 300 (1994)). Similarly, we conclude that the fact that Sergeant Smith and Detective Williams were armed lacks any particular probative force in this instance, given that almost all law enforcement officers are armed and the fact that neither officer made any motion toward or use of his weapon during the questioning process. As a result, these aspects of Juvenile's challenge to the trial court's denial of his suppression motion do not suffice to support a determination that he was subjected to custodial interrogation prior to admitting having fired a gun in the direction of the neighbor's residence.

The fact that Juvenile's parents told him to speak honestly with Sergeant Smith and Lieutenant Williams does not establish the appropriateness of a different outcome either. The General Assembly has clearly encouraged parental involvement in the process by which juveniles facing delinquency allegations are questioned, having afforded such juveniles the right to have a "parent, guardian, or custodian present during questioning." N.C. Gen. Stat. § 7B-2101(a)(3); *see also* N.C. Gen. Stat. § 7B-2101(b) (providing that, "[w]hen the juvenile is less than 14 years of age, no in-custody admission or confession resulting from interrogation may be admitted into evidence unless the confession or admission was made in the presence of the juvenile's parent, guardian, custodian, or attorney").[3] Furthermore, "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion." *Colorado v. Connelly*, 479 U.S. 157, 170, 107 S. Ct. 515, 523, 93 L. Ed. 2d 473, 486 (1986); *see also Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1690, 64 L. Ed. 2d 297, 308 (1980) (stating that *Miranda* warnings are intended to "vest a suspect in custody with an added measure of protection against coercive police practices"); *United States v. Jamison*, 509 F.3d 623, 625 (4th Cir. 2007) (holding that a defendant had not been subjected to custodial interrogation because his "freedom to terminate the interview was curtailed primarily by circumstances resulting from his injury and hospital admittance rather than by police restraint"). Although a determination that Juvenile's parents were acting as agents of the investigating officers might suffice to support a finding that Juvenile was in custody at the time in question, the record provides no support for such a determination in this case. *State v. Morrell*, 108 N.C. App. 465, 470, 424 S.E.2d 147, 151 (1993) (noting that, when an "accused's statements stem from custodial interrogation by one who in effect is acting as an agent of law enforcement, such statements are inadmissible unless the accused received a *Miranda* warning prior to questioning") (citing *State v. Etheridge*, 319 N.C. 34, 44, 352 S.E.2d 673, 679 (1987); *State v. Nations*, 319 N.C. 329, 331, 354 S.E.2d 516, 518 (1987); *Estelle v. Smith*, 451 U.S. 454, 466-68, 101 S. Ct. 1866, 1874-76, 68 L. Ed. 2d 359, 371-72 (1981)), *disc. review denied*, 333 N.C. 465, 427 S.E.2d 626. Simply put, although common sense suggests that a juvenile is likely to comply with a parental instruction to talk to investigating officers, "the fact that the defendant is youthful will not preclude the admission of his inculpatory statement absent mistreatment or coercion by the police." *State v. Fincher*, 309 N.C. 1, 8, 305

---

3. Juvenile was 14 when the offenses at issue in this case were committed.

IN RE D.A.C.

[225 N.C. App. 547 (2013)]

S.E.2d 685, 690 (1983); *see also United States v. Conley*, 779 F.2d 970, 973 (4th Cir. 1985) (recognizing that an individual, such as a prisoner, would "always accurately perceive that his ultimate freedom of movement is absolutely restrained" and requiring additional police action in order to trigger the need for the administration of *Miranda* warnings), *cert. denied*, 479 U.S. 830, 107 S. Ct. 114, 93 L. Ed. 2d 61 (1986). Therefore, we are unable to conclude that the fact that Juvenile's parents were present, knew that Sergeant Smith and Lieutenant Williams were speaking with Juvenile, and told Juvenile to talk to the investigating officers and to tell them the truth suggests that Juvenile was in custody at the time that he admitted having shot in the direction of the neighbor's house. As a result, we hold that the trial court did not err by finding that Juvenile's oral admission that he shot in the direction of the neighbor's residence did not result from an impermissible custodial interrogation conducted without the provision of the warnings required by *Miranda* and N.C. Gen. Stat. § 7B-2101.[4]

### III.  Conclusion

Thus, for the reasons set forth above, we conclude that neither of Juvenile's challenges to the trial court's adjudication and dispositional orders have merit. As a result, the trial court's orders should be, and hereby are, affirmed.

AFFIRMED.

Chief Judge MARTIN and Judge STEELMAN concur.

---

4. In addition, Juvenile points to the fact that Sergeant Smith and Lieutenant Williams did not tell him that he did not have to speak with them. Although evidence that an officer informed a suspect that he was not obligated to speak with investigating officers would certainly tend to support a finding that no custodial interrogation occurred, *Hodge*, 153 N.C. App. at 108-09, 568 S.E.2d at 882, Juvenile does not cite any authority in support of his implicit assertion that the converse of this proposition is true, and we know of none. In fact, such an argument comes close to suggesting that a truncated warning consistent with *Miranda* and N.C. Gen. Stat. § 7B-2101 needs to be given in order ensure that such warnings are unnecessary.