HUDSON, Justice.
**159 Here we are asked to decide whether the trial court properly concluded that defendant was not subjected to a custodial interrogation *440 as defined in Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when police questioned him while he was confined under a civil commitment order. After considering the totality of the circumstances, we conclude that defendant was in custody for Miranda purposes. Therefore, the failure of police to advise him of his rights under Miranda rendered inadmissible the incriminating statements he made during the interrogation. Accordingly, we reverse the trial court's order denying his motion to suppress those statements. Because this error was prejudicial, we vacate defendant's conviction.
I. FACTUAL AND PROCEDURAL BACKGROUND
On the evening of 10 December 2012 in Monroe, North Carolina, a man stole Stephanie Gaddy's purse in a parking lot while threatening her with a handgun. Shortly after 1:00 p.m. on 11 December 2012, Defendant Tae Kwon Hammonds was taken to the emergency room at a local hospital following an intentional overdose. An involuntary commitment order was issued at 3:50 p.m. upon a finding by a Union County magistrate that defendant was "mentally ill and dangerous to self or others." As directed in the order, the Union County Sheriff's Office took defendant into custody at 4:32 p.m. that same day.
After using surveillance footage to identify defendant as a suspect in the robbery, investigators learned that he was confined at the hospital under the involuntary commitment order. In the early evening of 12 December, while defendant was hospitalized under that order, he was questioned by Detective Jonathan Williams and his supervisor, Lieutenant T.J. Goforth, both of the Monroe Police Department, for about an hour and a half. Without informing him of his Miranda rights, the officers elicited self-incriminating statements from defendant during the interview. Defendant was discharged from the hospital later that evening and transported to a treatment facility.
On 4 February 2013, the Union County Grand Jury indicted defendant for robbery with a dangerous weapon. On 30 June 2014, defendant moved to suppress all statements he made to police during the 12 December 2012 interview. In support of his motion, defendant asserted that (1) he was in custody when the statements were taken and was not informed of his Miranda rights at that time, and (2) even if he was not in custody, his statements were not made voluntarily.
**160 Defendant was tried during the criminal session of Superior Court, Union County, that began on 30 June 2014 before Judge Tanya T. Wallace. After hearing defendant's motion to suppress, the trial court denied the motion on 1 July 2014. The court also denied defendant's motion to dismiss at the close of the State's evidence. A jury convicted defendant as charged, and the court sentenced him to sixty to eighty-four months of imprisonment. The court also ordered defendant to pay, inter alia , fifty dollars in restitution to the victim. On 24 July 2014, the court entered a written order on the motion to suppress in which it made findings of fact and conclusions of law.
Defendant appealed to the Court of Appeals, which on 20 October 2015 issued a divided opinion that found no error in the guilt-innocence portion of defendant's trial but vacated the portion of the trial court's judgment ordering defendant to pay restitution to the victim and remanded the case for a new hearing on that issue. State v. Hammonds , --- N.C. App. ----, ----, 777 S.E.2d 359, 371-72 (2015). Regarding defendant's challenge to the trial court's denial of his suppression motion, the majority (1) concluded that "the trial court properly considered all of the factors to determine if defendant was in custody and did not err in its conclusion of law that based on the totality of the circumstances, defendant was not in custody at the time he was interviewed," and (2) held that "the trial court's findings of fact support its conclusion of law that defendant's confession was voluntary." Id. at ----, ----, 777 S.E.2d at 368, 371.
The dissenting judge, however, concluded that the trial court's findings of fact did not reflect consideration of whether defendant "was physically restrained from leaving the place of interrogation" or whether he "was free to refuse to answer questions." Id. at ----, 777 S.E.2d at 374 (Inman, J., dissenting) (quoting *441 State v. Fisher , 158 N.C. App. 133, 145, 580 S.E.2d 405, 415 (2003), aff'd per curiam , 358 N.C. 215, 593 S.E.2d 583 (2004) ). The dissenting judge stated that she would reverse the trial court's denial of defendant's motion to suppress and remand "for reconsideration of the motion and the entry of findings and conclusions based upon all pertinent factors." Id. at ----, 777 S.E.2d at 375. Defendant filed his appeal of right, and on 28 January 2016 this Court allowed defendant's petition for discretionary review to consider additional issues.
On 9 June 2016, this Court vacated the opinion of the Court of Appeals and the trial court's orders denying defendant's motion to suppress, and we instructed the trial court to hold a new hearing on the motion to suppress.
**161 State v. Hammonds , 368 N.C. 906, 789 S.E.2d 1 (2016). We directed the trial court to "apply a totality of the circumstances test" when rehearing the motion and to consider all factors, including "whether the involuntarily committed defendant 'was told that he was free to end the questioning.' " Id. at 907-08, 789 S.E.2d at 2 (quoting Howes v. Fields , 565 U.S. 499, 517, 132 S.Ct. 1181, 1194, 182 L.Ed.2d 17, 32 (2012) ).
After taking additional evidence at a new suppression hearing, the trial court entered an order on 27 September 2016 that again denied defendant's motion to suppress. As directed by this Court, the trial court made new findings of fact and conclusions of law in its order. The matter is now back before this Court for review.
II. ANALYSIS
On appeal, in addition to challenging several of the trial court's findings of fact, defendant argues that the court's undisputed findings do not support its conclusions of law that (1) he was not in custody for purposes of Miranda during his 12 December 2012 interrogation, and (2) his statements to police during that interrogation were voluntary.
The standard of review in evaluating a trial court's "denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." State v. Jackson , 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (quoting State v. Otto , 366 N.C. 134, 136, 726 S.E.2d 824, 827 (2012) ). "[T]he trial court's findings of fact 'are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.' " State v. Buchanan , 353 N.C. 332, 336, 543 S.E.2d 823, 826 (2001) (quoting State v. Brewington , 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000), cert. denied , 531 U.S. 1165, 121 S.Ct. 1126, 148 L.Ed.2d 992 (2001) ).
Conclusions of law are fully reviewable on appeal. State v. Greene , 332 N.C. 565, 577, 422 S.E.2d 730, 737 (1992). "[T]he trial court's conclusions of law must be legally correct, reflecting a correct application of applicable legal principles to the facts found." Buchanan , 353 N.C. at 336, 543 S.E.2d at 826 (alteration in original) (quoting State v. Golphin , 352 N.C. 364, 409, 533 S.E.2d 168, 201 (2000), cert. denied , 532 U.S. 931, 121 S.Ct. 1379, 149 L.Ed.2d 305 (2001) ). A trial court's determination of whether an interrogation is conducted while a person is "in custody" for purposes of Miranda is a conclusion of law and thus fully reviewable by this Court. Id. at 336, 543 S.E.2d at 826.
**162 For the reasons set forth below, we hold that the trial court's conclusion that defendant was not in custody for purposes of Miranda reflected an incorrect application of legal principles to the facts found by the trial court.[1]
In Miranda the United States Supreme Court recognized the "inherently compelling pressures" exerted upon an individual during an in-custody interrogation by law enforcement officers. 384 U.S. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. As a result, the Court prescribed procedural safeguards designed "to combat these pressures and to permit a full opportunity to exercise the [Fifth Amendment] privilege against self-incrimination." Id. at 467, 86 S.Ct. at 1624, 16 L.Ed.2d at 719. These safeguards require that a defendant "be warned prior to any questioning that he has the right to remain *442 silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id. at 479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726.
A Miranda warning is only required, however, when an individual is subjected to a "custodial interrogation." State v. Barden , 356 N.C. 316, 337, 572 S.E.2d 108, 123 (2002) (citing, inter alia , Miranda , 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706 ). A "custodial interrogation" occurs when "questioning [is] initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda , 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706. In determining whether an individual was subjected to a custodial interrogation, courts consider whether, "based on the totality of the circumstances, ... there was a 'formal arrest or [a] restraint on freedom of movement of the degree associated with a formal arrest.' " Buchanan , 353 N.C. at 339, 543 S.E.2d at 828 (quoting State v. Gaines , 345 N.C. 647, 662, 483 S.E.2d 396, 405, cert. denied , 522 U.S. 900, 118 S.Ct. 248, 139 L.Ed.2d 177 (1997)).
Two discrete inquiries are essential to [this] determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was [not] at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are **163 reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.
J.D.B. v. North Carolina , 564 U.S. 261, 270, 131 S.Ct. 2394, 2402, 180 L.Ed.2d 310, 322 (2011) (quoting Thompson v. Keohane , 516 U.S. 99, 112, 116 S.Ct. 457, 465, 133 L.Ed.2d 383, 394 (1995) (brackets, internal quotation marks, and citations omitted)). Custody for Miranda purposes "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California , 511 U.S. 318, 323, 114 S.Ct. 1526, 1529, 128 L.Ed.2d 293, 298 (1994) (per curiam). That is, "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Id. at 324, 114 S.Ct. at 1529, 128 L.Ed.2d at 299 (quoting Berkemer v. McCarty , 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317, 336 (1984) ).
As the United States Supreme Court has recently clarified, however, "[n]ot all restraints on freedom of movement amount to custody for purposes of Miranda ." Fields , 565 U.S. at 509, 132 S.Ct. at 1189, 182 L.Ed.2d at 28. Rather, "the freedom-of-movement test identifies only a necessary and not a sufficient condition for Miranda custody." Id. at 509, 132 S.Ct. at 1190, 182 L.Ed.2d at 28 (quoting Maryland v. Shatzer , 559 U.S. 98, 112, 130 S.Ct. 1213, 1224, 175 L.Ed.2d 1045, 1058 (2010) ).[2] Therefore, when a suspect's freedom of movement is already restricted because of conditions unrelated to the interrogation-such as civil commitment, criminal confinement, or hospitalization-reviewing courts must consider "all of the features of the interrogation" to determine "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in Miranda ." Id. at 509, 514, 132 S.Ct. at 1190, 1192, 182 L.Ed.2d at 28, 31.
Here, in its order issued upon rehearing defendant's motion to suppress, the trial court made the following finding of fact in which it recited circumstances it found to support its determination that defendant was not subjected to a custodial interrogation:
**164 Defendant was interviewed by two (2) detectives from the Monroe Police Department, they were in street clothes, asked *443 permission to sit down (which was given by defendant), did not block the door; were in a room within the emergency department with a blaring loudspeaker and where conversations outside the room could be heard; that defendant was not handcuffed and was not restrained by law enforcement or the hospital, that the door to the room was glass and a sitter was assigned to observe the defendant, that the room had no bathroom, but the patient could walk to the door, open it and request personnel to accompany the patient to the bathroom (or make other requests of staff); that the interview was approximately 1 ½ (one and one half) hours in length (relatively short); that defendant was repeatedly told he was not under arrest and no warrants had been issued; that the conversation was calm and cordial in tone, that the detectives offered food or drink after the interview....
The court also found, notably, the following facts:
The officers.... never informed the defendant he could tell them to leave [and] never informed the defendant he could ask them to stop talking or he could stop talking to them and end the questioning.
The officers did inform him that as soon as he talked, they could leave .
(Emphasis added.)
Based upon its factual findings, the court explained that "after carefully weighing the totality of the circumstances, even the facts of defendant's involuntary commitment and the (very important) factor that defendant was never told he could end the questioning, this Court determines ... that defendant was not in custody requiring Miranda Rights to be given." The court further concluded that "[a] reasonable person in defendant's position at the time of the interview would not have believed that he was in the custody of law enforcement." Accordingly, the court concluded, "The statements made by defendant were made when defendant was not in custody for purposes of the Miranda [rule]" and "[n]o Constitutional rights of defendant were violated."
In considering whether these conclusions resulted from a correct application of the law to the findings in this case, we focus on whether **165 "a reasonable person" in defendant's situation would "have felt he ... was [not] at liberty to terminate the interrogation," J.D.B. , 564 U.S. at 270, 131 S.Ct. at 2402, 180 L.Ed.2d at 322 (quoting Thompson , 516 U.S. at 112, 116 S.Ct. at 465, 133 L.Ed.2d at 394 ), and "whether the relevant environment present[ed] the same inherently coercive pressures as the type of station house questioning at issue in Miranda ." Fields , 565 U.S. at 509, 132 S.Ct. at 1190, 182 L.Ed.2d at 28.
The United States Supreme Court in Howes v. Fields also addressed a situation in which a defendant's freedom of movement was limited by circumstances not connected to the interrogation. There a prisoner was escorted by corrections officers from his cell to a conference room where two sheriff's deputies questioned him for between five and seven hours without reading him his Miranda rights. Id. at 502-04, 132 S.Ct. at 1185-86, 182 L.Ed.2d at 23. The deputies' questions, which elicited incriminating statements, concerned criminal activity unrelated to the offense that had resulted in the suspect's incarceration.
In Fields the Court confronted the question of whether, for purposes of Miranda , the suspect was "in custody" when he was incarcerated and, consequently, was "not free to leave the conference room by himself." Id. at 515, 132 S.Ct. at 1193, 182 L.Ed.2d at 31. The Court first made clear that "imprisonment alone is not enough to create a custodial situation within the meaning of Miranda [,]" id. at 511, 132 S.Ct. at 1190, 182 L.Ed.2d at 28-29 (emphasis added), given that the "standard conditions of confinement and associated restrictions on freedom will not necessarily implicate the same interests that the Court sought to protect when it afforded special safeguards to persons subjected to custodial interrogation," id. at 512, 132 S.Ct. at 1191, 182 L.Ed.2d at 29. The Court held that rather than applying a per se rule in instances "[w]hen a prisoner is questioned, the determination of custody should focus on all of the features of the interrogation. These include the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is *444 conducted." Id. at 514, 132 S.Ct. at 1192, 182 L.Ed.2d at 30-31 (citation omitted).
In conducting its totality-of-the-circumstances analysis, the Court determined that the following circumstances weighed in favor of concluding that the suspect was in custody under Miranda : (1) he neither invited the interview nor consented to it in advance; (2) he was not advised that he was free to decline the interview; (3) "[t]he interview lasted for between five and seven hours in the evening and continued well past" his typical bedtime; (4) the deputies who interviewed him were armed; and (5) "one of the deputies, according to [the suspect], **166 '[u]sed a very sharp tone,' " and "on one occasion, profanity." Id. at 515, 132 S.Ct. at 1192-93, 182 L.Ed.2d at 31.
The Court determined, on the other hand, that several circumstances weighed against a conclusion that the suspect had been subjected to a custodial interrogation: (1) he "was told at the outset of the interrogation, and was reminded again thereafter, that he could leave and go back to his cell whenever he wanted"; (2) he "was not physically restrained or threatened"; (3) he "was interviewed in a well-lit, average-sized conference room, where he was 'not uncomfortable' "; (4) he "was offered food and water"; and (5) "the door to the conference room was sometimes left open." Id. at 515, 132 S.Ct. at 1193, 182 L.Ed.2d at 31.
The Court ultimately concluded that, "[t]aking into account all of the circumstances of the questioning-including especially the undisputed fact that [the suspect] was told that he was free to end the questioning and to return to his cell -we hold that [the suspect] was not in custody within the meaning of Miranda ." Id. at 517, 132 S.Ct. at 1194, 182 L.Ed.2d at 32 (emphasis added).
Here defendant's freedom of movement was already severely restricted by the civil commitment order. Unlike in Fields , however, these officers failed to inform defendant that he was free to terminate the questioning and, more importantly, communicated to him that they would leave only after he spoke to them about the robbery. As noted above, the trial court made an undisputed finding that the officers told defendant that "as soon as he talked, they could leave." Specifically, the transcript of the interrogation reveals that before defendant's incriminating statements, Lieutenant Goforth told him:
So let's think about Monday night again and what took place Monday evening, okay. All right. And then after we talk about this, we're going to get up and walk out and you can have your supper and you can watch some Christmas shows on TV and rest, okay. And we're going to go back to work and we're going to leave you alone.
We conclude that these statements, made to a suspect whose freedom is already severely restricted because of an involuntary commitment, would lead a reasonable person in this position to believe he was not "at liberty to terminate the interrogation" without first answering his interrogators' questions about his suspected criminal activity. J.D.B. , 564 U.S. at 270, 131 S.Ct. at 2402, 180 L.Ed.2d at 322 (quoting Thompson , 516 U.S. at 112, 116 S.Ct. at 465, 133 L.Ed.2d at 394 ).
**167 We are mindful that "no single factor is necessarily controlling when we consider the totality of the circumstances." Barden , 356 N.C. at 338, 572 S.E.2d at 124 (citation omitted). After considering all of the relevant facts, we conclude that defendant was subjected to a custodial interrogation and thus was entitled to a Miranda warning. Accordingly, the trial court's order denying defendant's motion to suppress must be reversed because the trial court's conclusion to the contrary was an erroneous application of the law.
We also conclude that this error was prejudicial and therefore requires us to vacate defendant's conviction. "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C.G.S. § 15A-1443 (2015) ; see also State v. Robinson , 330 N.C. 1, 31, 409 S.E.2d 288, 305 (1991) ("Because the error is of constitutional dimension, the State bears the burden of demonstrating that it was harmless beyond a reasonable doubt." (citing *445 State v. McKoy , 327 N.C. 31, 44, 394 S.E.2d 426, 433 (1990) )). The State has not attempted to show that the constitutional error alleged by defendant-and found by this Court-was harmless beyond a reasonable doubt. Accordingly, the error is deemed prejudicial.[3]
III. CONCLUSION
For the reasons stated above, we reverse the trial court's 27 September 2016 order denying defendant's motion to suppress the incriminating statements he made during his 12 December 2012 interrogation. Because this error was prejudicial, we vacate defendant's conviction and remand this case to the superior court for further proceedings not inconsistent with this opinion.
JUDGMENT VACATED; REVERSED AND REMANDED.

Defendant's challenges to the trial court's findings of fact are rendered moot by our holding that the court's denial of his motion to suppress must be reversed.

For example, "imprisonment alone is not enough to create a custodial situation within the meaning of Miranda ," Fields , 565 U.S. at 511, 132 S.Ct. at 1190, 182 L.Ed.2d at 28-29, and "the temporary and relatively nonthreatening detention involved in a traffic stop or Terry stop does not constitute Miranda custody," Shatzer , 559 U.S. at 113, 130 S.Ct. at 1224, 175 L.Ed.2d at 1058 (citation omitted).

Because we hold that the trial court's erroneous conclusion that defendant was not entitled to a Miranda warning requires reversal of its suppression order, we need not consider whether his statements should have been suppressed on the alternative ground that they were involuntary.