IN THE COURT OF APPEALS OF NORTH CAROLINA

 2021-NCCOA-300

 No. COA20-371

 Filed 6 July 2021

 Iredell County, No. 19JB44

 IN THE MATTER OF: J.D.F.

 Appeal by the juvenile from an order entered on 8 August 2019 by Judge

 Deborah P. Brown in Iredell County District Court. Heard in the Court of Appeals on

 27 April 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Elly S. Young,
 for the State-Appellee.

 Assistant Appellate Defender, Amanda S. Hitchcock, for the Juvenile-
 Appellant.

 GORE, Judge.

¶1 The juvenile, James,1 appeals from an order denying a motion to suppress

 statements. James argues he was in custody during questioning and should have

 received Miranda warnings and that his confession was involuntary. We hold the

 trial court did not err in finding that James’s confession was given voluntarily.

 However, we hold the trial court made insufficient findings of fact to support its

 custody conclusion and remand this matter to the trial court.

 1 Pseudonyms are used to protect the identity of the juveniles.
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 I. Background

¶2 James was present in North Carolina because he was sent to live with Jennifer

 Elliot (“Ms. Elliot”), James’s Aunt, and her partner Robert Mitchell (“Mr. Mitchell”)

 in November 2018 while James’s mother was incarcerated in Georgia. At the time,

 James was thirteen years old. Ms. Elliot had a limited power of attorney to allow her

 to make medical and educational decisions for James while he lived in North

 Carolina. James would often play by a creek near his aunt’s house with his cousin

 Mason, age nine. Two boys from the neighborhood would sometimes join James and

 Mason in playing by the creek. These boys told James and Mason how they had

 brought girls to the creek to have sex. At some point in December 2018, Mason

 performed oral sex on Jason by the creek.

¶3 On 30 January 2019, the Iredell County Sheriff’s Department received a report

 from Ms. Elliot indicating that her son, Mason, had been the victim of sexual assault.

 Detective Lowrance began an investigation by interviewing Mason. Mason told

 Detective Lowrance that James asked Mason to perform oral sex on him in December

 2018.

¶4 On 11 February 2019, Mr. Mitchell brought James to the Iredell County

 Sheriff’s Department to speak with Detective Lowrance. Detective Lowrance and Mr.

 Mitchell spoke for about twenty minutes in the Special Victims Unit, a locked facility,

 while James waited alone in the lobby. When the interview with James began,
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 Detective Lowrance first asked James if he knew why he was there. James indicated

 that he believed the interview was based on some of his behavior at school. Detective

 Lowrance informed James he was there to talk about some sexual activity between

 James and his cousin Mason.

¶5 The interview between James and Detective Lowrance took place in an

 interview room within the Iredell County Sheriff’s Department. The room has a sign

 on its exterior that indicates when an interview is taking place, has a window to allow

 people outside the interview to observe, and is outfitted with video equipment, which

 was used to record the interview between James and Detective Lowrance. During the

 interview Detective Lowrance told James several times that he would go home with

 Mr. Mitchell at the end of the interview, regardless of what he said during the

 interview. At no time was James restrained and Mr. Mitchell was present for the

 entire interview.

¶6 When asked about having sexual contact with Mason, James initially denied

 any sexual contact. James admitted to hanging out with Mason at the creek and that

 two other boys had told him and Mason a story about having sex with girls by the

 creek. Approximately thirty minutes into the interview, Detective Lowrance told

 James he was giving James his last opportunity to tell the truth. At this time, James

 admitted to sexual contact with Mason, but stated that it was Mason’s idea, he “got

 tired of [Mason] bringing up the story [with the two other boys],” and only did it to
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 get Mason to “quit bugging him about it.” James stated the sexual contact itself lasted

 “maybe twenty seconds.” James wrote a statement which he signed and indicated

 that it was voluntary. The Voluntary Statement Form signed by Detective Lowrance

 and by James indicates his date of birth as 5 April 2005, which is consistent with his

 age of 13 at the time he made the statement.

¶7 On 15 March 2019, petitions were filed by the court counselor alleging one act

 of First-Degree Sexual Offense. On 3 June 2019, James filed a motion to suppress his

 statement made to Detective Lowrance contending that the exclusion of the

 statement is required by the Fifth, Sixth, and Fourteenth Amendments to the United

 States Constitution and by Article 1, Sections 23 and 27, of the North Carolina

 Constitution. On 8 August 2019, the trial court denied James’s motion to suppress,

 finding that James’s statement was knowing and voluntarily given, and that James

 was not in custody, therefore, Miranda warnings were not required.

¶8 On 25 July 2019, James admitted the charge of First-Degree Sexual Offense,

 by Alford admission. James’s decisions to admit by Alford plea was solely due to the

 denial of the motion to suppress. James gave written notice of appeal of the denial of

 the motion to suppress on 15 August 2019.

 II. Analysis

¶9 On appeal, James argues that the trial court erred in denying his motion to

 suppress because (1) his statements were the product of a custodial interrogation and
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 were made without Miranda warnings or the additional protections of N.C. Gen. Stat.

 § 7B-2101, and (2) his statements were not voluntary.

 A. Standard of Review

¶ 10 Our review of a trial court’s order on a motion to suppress is limited to

 determining whether competent evidence supports the trial court’s findings of fact

 and whether the findings of fact support the conclusions of law. State v. Hammonds,

 370 N.C. 158, 161, 804 S.E.2d 438, 441 (2017). If we find competent evidence supports

 the trial court’s findings of fact, such findings are binding on appeal. Id. “Legal

 conclusions, including the question of whether a person has been interrogated while

 in police custody, are reviewed de novo.” In re K.D.L., 207 N.C. App. 453, 456, 700

 S.E.2d 766, 769 (2010). “Under a de novo review, the court considers the matter anew

 and freely substitutes its own judgment for that of the lower tribunal.” State v.

 Williams, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quotation marks and

 citation omitted).

 B. Juvenile Miranda Rights

¶ 11 The Fifth Amendment of the United States Constitution guarantees that “[n]o

 person . . . shall be compelled in any criminal case to be a witness against himself.”

 U.S. Const. amend. V. In considering this principle, the Supreme Court of the United

 States, in Miranda v. Arizona, found that “when an individual is taken into custody

 or otherwise deprived of his freedom by the authorities in any significant way and is
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 subjected to questioning, the privilege against self-incrimination is jeopardized,”

 therefore, certain procedural safeguards are necessary to protect the individual. 384

 U.S. 436, 478, 16 L. Ed. 2d 694, 726 (1966).

¶ 12 Juveniles are also entitled to receive Miranda warnings before custodial

 interrogations. See In re Gault, 387 U.S. 1, 55, 18 L. Ed. 2d 527, 561 (1967). North

 Carolina statutory law provides further protections for juveniles who face custodial

 interrogation. Specifically, under N.C. Gen. Stat. § 7B-2101, “[a]ny juvenile in custody

 must be advised prior to questioning:”

 (1) That the juvenile has a right to remain silent;
 (2) That any statement the juvenile does make can be and
 may be used against the juvenile;
 (3) That the juvenile has a right to have a parent, guardian,
 or custodian present during questioning; and
 (4) That the juvenile has a right to consult with an attorney
 and that one will be appointed for the juvenile if the
 juvenile is not represented and wants representation.

 N.C. Gen. Stat. § 7B-2101(a) (2020). Further protections are provided for juveniles

 who are younger than 16 years of age. In such cases “no in-custody admission or

 confession resulting from interrogation may be admitted into evidence unless the

 confession or admission was made in the presence of the juvenile’s parent, custodian,

 or attorney.” N.C. Gen. Stat. § 7B-2101(b). If an attorney is not present, the juvenile’s

 parent, custodian, or guardian must also be advised of the juvenile’s § 7B-2101(a)

 rights. Id. However, these protections are only required if the juvenile is found to be
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 in custody at the time of questioning under the general Miranda custodial

 interrogation framework. In re K.D.L., 207 N.C. App. at 458, 700 S.E.2d at 770.

¶ 13 Whether an individual is in custody when questioned by law enforcement is an

 objective test and requires the court to determine “whether a reasonable person in

 the position of the [questioned individual] would believe himself to be in custody or

 that he had been deprived of his freedom of action in some significant way.” In re

 D.A.C., 225 N.C. App. 547, 552, 741 S.E.2d 378, 381–82 (2013). This requires

 employing a totality of the circumstances test. Id. Further, when a juvenile is being

 questioned the court must consider the juvenile’s age, “so long as the child’s age was

 known to the officer at the time of police questioning, or would have been objectively

 apparent.” J.D.B. v. North Carolina, 564 U.S. 261, 274, 180 L. Ed. 2d 310, 325 (2011).

 C. Application

¶ 14 We now turn to the facts of the present case. James first argues that he was in

 custody during questioning. In support of this argument James asserts that the trial

 court’s factual findings were unsupported by the evidence and omitted or

 misrepresented critical facts; because he was in custody, he should have been given

 Miranda warnings; and as a result, his confession should have been suppressed.

 James also argues that his confession was not voluntary. James asserts that because

 of his youth and inexperience and the detective’s use of trickery his confession was

 involuntary and should have been suppressed. We hold that because the trial court
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 failed to make a factual finding that reflected it considered James’ age at the time he

 was questioned, the trial court’s findings were insufficient to support its legal

 conclusion that James was not in custody at the time of questioning. Because we

 otherwise conclude that the trial court’s conclusions of law were supported by its

 factual findings, and the findings were supported by the evidence, we remand rather

 than vacate or reverse the trial court’s order.

 i. Custody

¶ 15 In considering James’s motion to suppress the trial court was first required to

 determine whether James was in custody at the time of interrogation. As stated, this

 required the trial court to apply an objective test and determine whether a reasonable

 person in James’s position would consider themselves to be in custody, i.e., not at

 liberty to terminate the interrogation, typically demonstrated by a formal arrest or

 restraint on freedom of movement in a manner associated with formal arrest. In re

 D.A.C., 225 N.C. App. at 552, 741 S.E.2d at 381–82; J.D.B., 564 U.S. at 270, 180 L.

 Ed. 2d at 322. The trial court, to fully evaluate the effect of objective circumstances

 on the custody analysis, must consider the juvenile’s age in relation to those

 circumstances. See J.D.B., 564 U.S. at 276, 180 L. Ed. 2d at 325–26. However, while

 the juvenile’s age is an important consideration that must be included in the analysis,

 the juvenile’s age will not be a determinative, or even a significant, factor in every

 case. J.D.B., 564 U.S. at 277, 180 L. Ed. 2d at 326.
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

¶ 16 James first argues that the trial court’s findings of fact were unsupported by

 the evidence and misrepresented critical facts. We review findings of fact to

 determine if they are supported by any competent evidence. Hammonds, 370 N.C. at

 161, 804 S.E.2d at 441. The findings of fact are conclusive on appeal if there is any

 competent evidence supporting the findings, even if conflicting evidence also exists.

 Id. Here, James challenges the findings pertaining to Mr. Mitchell and Detective

 Lowrance speaking in the Special Victims Unit, while James waited in the lobby; the

 location of the interview and the sign on the interview room door; and that Detective

 Lowrance told James he was not under arrest and would be going home with Mr.

 Mitchell at the end of the interview. Competent evidence, specifically Detective

 Lowrance’s testimony at the hearing on the motion to suppress and pictures

 introduced into evidence support these challenged findings of fact. Therefore, we

 must find these findings of fact conclusive on appeal.

¶ 17 James next challenges the trial court’s conclusion of law that he was not in

 custody during questioning. Specifically, James asserts that this conclusion of law

 was unsupported by any competent evidence and failed to account for the impact of

 James’s age in the totality of the circumstances test. We review conclusions of law de

 novo, freely substituting our judgment for the trial court’s, as necessary, to determine

 whether the findings of fact support the conclusion of law. Hammonds, 370 N.C. at

 161, 804 S.E.2d at 441; In re K.D.L., 207 N.C. App at 456, 700 S.E.2d at 769.
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

¶ 18 Here, based on the factual findings made by the trial court, the determination

 that James was not in-custody during questioning was likely proper. This conclusion

 is supported by the facts showing James was not restrained during the interview,

 James was not searched upon arrival at the Sheriff’s Department, the interview

 lasted approximately fifty minutes, James was transported to the Sheriff’s

 Department by Mr. Mitchell and not in a law enforcement vehicle, and James was

 told multiple times he would be going home with Mr. Mitchell at the end of the

 interview. When weighed against the facts that James was questioned in an

 interrogation room within a Sheriff’s Department, the interview was recorded, and

 the interview was conducted by an armed detective, under a standard totality of the

 circumstances test a conclusion that James was not in-custody would be supported

 by these facts.

¶ 19 However, in this case, and all cases involving an interrogation of a juvenile,

 the trial court was required to consider James’s age as part of the totality of the

 circumstances test. Here, the only mention of James’s age by the trial court was in

 the first finding of fact which stated:

 The Iredell County Sheriff’s Department, specifically,
 Detective Lowrance, received a report on January 30th,
 2019 from Ms. Elliot indicating that her nine year old son,
 [Mason], had been the victim of a sexual assault, involving
 the juvenile [James], who is a thirteen (13) year old relative
 living in Ms. Elliot’s home.
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 This passing mention of James’s age is not sufficient for us to say that the trial court

 properly considered James’s age when applying the requisite totality of the

 circumstances test. Therefore, we conclude that the trial court erred in concluding

 James was not in custody during questioning and remand to the trial court for a new

 suppression hearing with instructions to consider James’s age.

 ii. Voluntariness

¶ 20 James next argues that his statement to Detective Lowrance should have been

 suppressed as involuntary. In support of this argument, James asserts that he was

 especially vulnerable to coercion because of his age and inexperience. Further, James

 claims Detective Lowrance used deceit, threats, and accusations that James was

 lying to coerce him into confessing.

¶ 21 A voluntary confession is the “product of an essentially free and unconstrained

 choice by its maker.” Schneckloth v. Bustamonte, 412 U.S. 218, 225–26, 36 L. Ed. 2d

 854, 862 (1973) (internal citations omitted). If one’s “will has been overborn and his

 capacity for self-determination critically impaired, the use of his confession offends

 due process.” Id. A totality of the circumstances test is utilized to determine whether

 a confession was involuntary. State v. Jackson, 308 N.C. 549, 581, 304 S.E.2d 134,

 152 (1983). Admission of an involuntary confession violates an individual’s due

 process rights. Id. North Carolina follows the federal test to determine voluntariness.

 Id. “Some factors considered to determine whether a confession is voluntary are: (1)
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 the youth of the accused, (2) the accused’s lack of education, (3) the length of

 detention, (4) the nature of questioning, and (5) the use of physical punishment, such

 as deprivation of food or sleep.” State v. McKinney, 153 N.C. App. 369, 373, 570 S.E.2d

 238, 242 (2002) (citing Schneckloth, 412 U.S. at 226, 36 L. Ed. 2d at 862).

¶ 22 Generally, “a minor has the capacity to make a voluntary confession . . .

 without the presence or consent of counsel or other responsible adult . . . .” State v.

 Dawson, 278 N.C. 351, 362, 180 S.E.2d 140, 147 (1971). The factors used in

 considering the admissibility of a confession given by a minor are his intelligence,

 education, experience, and ability to comprehend the meaning and effect of his

 statement, in addition to his age. Id. In State v. McKinney, the defendant, who was

 sixteen years-old at the time of questioning, argued that his youth and inexperience

 with the justice system showed a lack of understanding and rendered his confession

 involuntary. 153 N.C. App. at 374, 570 S.E.2d at 243. However, the McKinney Court

 found the defendant’s youth and inexperience argument unpersuasive because the

 defendant acknowledged to the interrogating officers that he knew and understood

 his rights. Here, similarly to McKinney, James indicated on his signed confession that

 the statement was given voluntarily. Therefore, we find that despite James’s age and

 inexperience he knew and understood the action he was taking.

¶ 23 “Admonitions by officers to a suspect to tell the truth, standing alone, do not

 render a confession inadmissible.” State v. McCullers, 341 N.C. 19, 460 S.E.2d 163,
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

 168 (1995) (internal citation and quotation omitted). North Carolina courts have

 routinely found that when officers tell suspects, during questioning, that they think

 the suspect is lying or this is the suspect’s last chance to tell the truth, subsequent

 confessions are not coerced. See McKinney, 153 N.C. App. at 375, 570 S.E.2d at 243;

 Jackson, 380 N.C. at 579, 304 S.E.2d at 151; State v. Thompson, 227 N.C. 19, 23–24,

 40 S.E.2d 620, 623–24 (1946). Here, Detective Lowrance’s alleged deceitful

 statements were, “I just believe you’re not telling me the whole truth, and I think

 you’re holding back . . .” and “I’m giving you an opportunity, and it’s your last

 opportunity, and I’m telling you that this is your last opportunity to be truthful.”

 These statements do not rise to the level of coercion and do not render James’s

 confession involuntary.

¶ 24 As a result, we conclude that the trial court did not err by finding that James’s

 confession was voluntary.

 III. Conclusion

¶ 25 For the foregoing reasons we hold that the trial court did not err in finding that

 James’s confession was voluntarily given. However, we hold that the trial court erred

 by failing to consider James’s age as part of its custody analysis. We therefore remand

 for a new suppression hearing with instructions for the trial court to consider James’s

 age in assessing whether James was in custody at the time of questioning.
 IN RE J.D.F.

 2021-NCCOA-300

 Opinion of the Court

NO ERROR IN PART; REMAND.

Judges INMAN and GRIFFIN concur.